## MAX. HELLMAN *v.* JULIUS REIS.

The Federal statutory prohibition of the admission of certain writings in evidence, unless stamped, applies only when such instruments are the predicates of an action, and does not affect their competency when introduced to establish merely a collateral fact

A., one of two copartners, without the authority of B., his partner, formed, in the firm name, another copartnership with C., without the authority or knowledge of B. *Held*, that A. exceeded his authority as partner, and was legally liable to B. for loss resulting from such unauthorized act.

GENERAL TERM.—Reserved from Special Term on the defendant's motion for a new trial. The facts appear sufficiently in the opinion of the court.

*Wolf,* for plaintiff.

*J. & V. Abraham,* for defendant.

STORER, J. The plaintiff below claimed in his petition that he had formed a verbal copartnership, in 1863, with the defendant and his brother, the object of which was the purchase of cotton in the South during the late rebellion. The plaintiff was to advance $10,000, and the defendant and his brother $5,000. In pursuance of this agreement, the plaintiff furnished $6,000 in cash, and a letter of credit for a larger sum, with which the defendant went to Memphis, Tennessee, but did not there purchase, nor has he ever purchased any cotton, nor has he returned the amount advanced to him by the plaintiff, but alleges as his excuse that, while at Memphis, he employed one A. Hirsch to aid him in the purchase of cotton, to whom he paid the money advanced by the plaintiff, but that Hirsch had not repaid the same, alleging that he was robbed of the amount. Wherefore, the plaintiff asks judgment.

The defendant answers, and admits the contract he made with the plaintiff, and the receipt of the money alleged to have been paid to him, but claims that upon his arrival at Memphis, finding it difficult to purchase cotton there, he employed Hirsch to go upon the plantations in the neighborhood to make purchases, giving him all the money advanced by plaintiff, together with nearly the same amount of the defendant's own; that Hirsch never returned to Memphis, nor did he ever return the money he had

received, alleging that he had been robbed of the whole amount. It was further claimed by the defendant that he made inquiry as to the integrity and fitness of Hirsch before he employed him and intrusted him with the money in question; that on the defendant's return to Cincinnati, he disclosed to the plaintiff all the facts, paid him the residue of the funds, and finally settled with him, with the understanding that each was to bear his part of the loss; and, as the plaintiff had advanced $1,000 more than the defendant in the adventure, he, the defendant, to make the burden equal, paid to the plaintiff $1,000, and alleges that this closed the whole business between them.

There is a general denial by replication of the facts stated in the answer.

On the trial at Special Term, it was proved that on the return of the defendant from Memphis, on being asked if he had taken any receipt from Hirsch for the money paid to him, he gave to the plaintiff a paper, of which the following is a copy:

"MEMPHIS, *November* 7, 1863.

"This is to certify that we, the undersigned, have this day made the following agreement:

"Aaron Hirsh of the first part, and Hellman & Ries Bros. of the second part. Both parties have this day contracted as copartners to purchase cotton, for which purpose Hellman & Reis Bros. have to invest ten thousand dollars, and Aaron Hirsch five thousand dollars, the profits of the business to be divided in four equal parts, to-wit: to Aaron Hirsch, M. Hellman, Julius Reis, and Samuel Reis.

    [Signed,]               "HELLMAN & REIS BROS.,
                         A. HIRSCH."

This agreement was unknown to Hellman until handed to him by the defendant, who, it was admitted, had no power to form a new copartnership, in which Hellman should be a member, without his consent.

This paper was objected to when offered in evidence,

because it did not appear to have been stamped. The judge, however, overruled the objection, and admitted the evidence.

It was also in proof that Hirsch, a few years before he met the defendant, had become insolvent, paying off his debt at twenty-five cents on the dollar, and at the time he is said to have received money from the defendant was a stranger to him, and was indebted to the plaintiff $1,200.

The defendant himself testified that he had come to the conclusion that Hirsch had not been robbed, but had appropriated the money paid to him to his own use.

The plaintiff denied that any final settlement had been made, but said that he had always intended to hold the defendant liable.

No exception was taken to the charge of the judge; and the jury, upon the whole testimony adduced, which is fully set forth in the bill of exceptions, when the case was submitted to them, rendered a verdict for $5,000 in the plaintiff's favor.

Two questions have been argued to us by the defendants' counsel, the decision of either of which in his favor, it is claimed, must prevent a recovery by the plaintiff.

The first is: Did the judge err in permitting the introduction of the paper, purporting to be the contract made by the defendant with Hirsch.

It is said this paper should have been stamped before it was of any legal validity, and could not have been offered in evidence under any circumstances.

We suppose the object of the laws requiring stamps to be affixed to written instruments was to increase the national revenue, and to prohibit every legal method of enforcing contracts when the parties to be benefited have been derelict in their duty. In other words, no such instrument should furnish a ground of action for the intervention of the courts; but when the paper is incidental only, and is offered to establish a fact not as the predicate

of a recovery, it may be admitted as proof of the fact it-
self.   In the case before us, neither party to the argreement
sought to set it up as a valid instrument; the purpose of
offering it was merely to show what was done by the
defendant, and not to create a liability upon any one.
The defendant in answer to the plaintiff's inquiry, as to
what evidence existed of the payment to Hirsch, instead of
presenting a rescript or any other equivalent, handed him
the instrument which set forth the arrangement he had
made with Hirsch, which was the only evidence of that
fact, and without which the anomaly would have been
presented of one partner placing in the hands of a com-
parative stranger a large sum of money without any
written evidence of its receipt.

We can not so regard our stamp acts.   The object of
their passage was to prevent fraud on the revenue by the
denying all legal remedies to them who violate those
statutes.   They could not apply to these cases where the
instrument was introduced as collateral only, and not relied
on directly;* more especially when the party who objects
to its introduction had delivered it to his partner to jus-
tify his own act.   Such an assumption would lead to this
result: A partner could disregard whatever the law required
to validate an instrument like that which was offered in
evidence, and on a trial, by objecting to its introduction,
discharge his liability.

We do not find any error in this ruling of the court below.

Upon the evidence stated in the record, it is very
clear the defendant exceeded his authority as a partner in
the arrangement he made with Hirsch. He could not
without the consent of the plaintiff have made such an
agreement, and he can not excuse himself on the ground
that it was a mere employment of Hirsch as an agent to
purchase.   The language of the agreement in writing is so
explicit that no such implication can be permitted.   He
had no right then to put at risk the plaintiff's capital in

*See *Mattheson* v. *Ross*, 2 House of Lords' Cases, 286.—Eds.

a mode not contemplated by the original agreement of the parties, nor to apportion the profits of the adventure in a manner different from that originally agreed upon. The purpose the parties had in view when the arrangement was first made in Cincinnati was entirely changed; new relations were formed without the knowledge of the plaintiff; his money was put in jeopardy in a manner he had not and probably would not have assented to. In this view of the case the defendant assumed a responsibility not warranted by the relations subsisting between him and the plaintiff; a responsibility not anticipated, and which, if assumed, must, as between the parties, give the plaintiff the legal right to hold the defendant liable for what the plaintiff has lost by his imprudence.

Good faith is the basis of all copartnerships. The members are agents for each other, and restricted to the performance of what belongs to the general object and scope of their compact. No partner can exceed the power delegated to him. If by the unauthorized, imprudent conduct of one member of a copartnership the others suffer, he must make good the loss. If one partner borrows money on the credit of the firm, and appropriates the money to his private use, the partners are liable, but they certainly have a clear remedy against the delinquent member for indemnity.

This rule pervades the whole law, and unless it is judicially asserted there is no security in commercial relations. "Every known deviation from, and every excess in the exercise of such rights, powers, authorities, and acts which produce any loss or injury to the partnership, are, to that extent, to be borne by the partner who causes or occasions the loss or injury; and he is bound to.indemnify the other parties therefor." Story on Partnership, sec. 173.

The defendant can not be said to have employed Hirsch as an agent to purchase cotton. Such a relation might well have existed if the person employed was honest, capable, and acquainted with the business in which he

was to engage; but, on the contrary, the plaintiff's capital was invested in a new adventure, without his privity or his knowledge, and we may well believe he would not have sanctioned the arrangement if he had been present when it was made.

We are led to the conclusion that the conduct of the defendant imposed upon him all the risks of the investment of the money advanced to Hirsch, and he thereby became liable legally to the plaintiff to the extent of the same in controversy.

How far the subsequent acts of the plaintiff, as disclosed in the record, furnish a defense on the ground of acquiescence, was a question of evidence for the consideration of the jury. The law was properly stated in the charge of the judge, and the matters adduced were to be believed or disbelieved as the jury should determine. They might well have found that there was no consideration moving from the defendant to the plaintiff for the alleged release of his claim, and therefore no legal obligation to do so existed. They might also have been satisfied that the plaintiff's silence, and his delay to assert his right, was explicable upon the peculiar circumstances in which he was placed, as was held upon a like application of the rule of evidence in *Smith* v. *Loring*, 2 Ohio, 440.

Having carefully considered the facts as we find them in the record, we are of opinion that there is no ground to set aside the verdict and award a new trial to the defendant.

The motion is, therefore, overruled, and judgment is ordered to be entered on the verdict.